Mr. Boutros? Mr. Chief Justice, and may it please the Court, the First Circuit held that independent contractor agreements are contracts of employment, and therefore they were exempt from the Federal Arbitration Act. This reading of Section 1's exemption is contrary to the plain meaning of the statute and its structure, purpose, history, and context. This Court, for many years, going back to before when the Federal Arbitration Act was enacted, has said over and over again that if Congress uses words like employment or employee or employer in a statute without further helpful definition, it intends for the common law agency rules to govern, that govern an employer and employee relationship. In the Section 1 exemption, Congress did not define or suggest it was coming up with a new, creative interpretation of the word employment or employees, which was also used in that clause. The First Circuit's dispute about the word worker in the very clause shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce. Congress didn't use the word employees. If it meant employees, it used a much broader term, workers. But shouldn't that inform what it meant by contract of employment? I think it does, Your Honor. It's a contract of employment of a worker. So if the worker had a different type of contract, a contract that's an independent contractor agreement, it would fall squarely outside the statute. No, but it said it shall apply to any other class of workers, not employees. It used a much broader term. But, Your Honor, it's a residual clause that follows contracts of employment of any other class of worker. But what we're trying to decide is what employment, contract of employment means, and if it meant only employees, Congress naturally, I would assume, would have used the word any other class of employees. But instead, it shows a much broader word, workers. Well, Your Honor, I think as we have argued, the fact that the railway, railroad employees is also, is mentioned right before that. Seamen, which are traditionally common law master-servant employees, demonstrates that. Well, except your adversary has pointed out that under the Seamen Act, it covered people who were not contracts of seamen, are not just people who are employees. It also is the tugboat operator who's on the boat guiding it. It's other people who are not simply employees. But Congress, just 5 years earlier in the Jones Act, defined seamen under the Jones Act as actions in the course of their employment, and as employees. This Court's Chandra's decision also uses the common law definition, a substantial connection. Ginsburg. But what you make of the other side that says in the seamen category, the ship surgeon, the pilot, qualify as seamen who are outside the Federal Arbitration Act, even though they're independent contractors, not common law employees? Justice Ginsburg, I think the physician example is a good one. The case that has been cited by the Respondent didn't involve the question of independent contractor or anything like that. The question was could the captain basically override the Hippocratic Oath in terms of the physician exercising his independent judgment. And I don't think the Court has to determine whether every seaman is an employee or not. The question is whether they had a contract of employment. And under this Court's decision in Circuit City, the Court emphasized that the exemption to the Federal Arbitration Act for contracts of employment should be given a narrow construction and a precise reading in order to further the pro-arbitration policies of the Federal Arbitration Act. Well, now, in the sense that it was limited to transportation workers. In that case, yes, Your Honor, that was the issue. But the overall thrust, if on page 120 to 121 of Circuit City, the Court, in talking about seaman, railroad employees, air carrier, the air carrier employees who were added to the Railway Labor Act in 1935, I believe, this Court said over and over again these were employment relationships, talked about the relationship between employees and employers. So this Court in Circuit City was clearly contemplating exactly what the statute says, that a contract of employment is a contract of employment. It's not an independent contractor agreement. Roberts, you keep in your brief, and the other side raises this concern, you quickly shift the discussion of contracts of employment to whether or not there's an employee-employer relationship. And simply because someone would be considered or not considered an employee doesn't necessarily answer the question of whether it's a contract of employment. People think naturally of employing an independent contractor. So I don't know why. The question is not employee-employer, it's employment. And employment in many of these contexts has a broader scope than the existence of an employee-employer relationship. It's absolutely true, Your Honor, that there are many different definitions of employment out there. But as I said, if the Court's decision in National Mutual Insurance Company v. Darden, which we've cited, and in the Community for Creative Nonviolence v. Reed case, which Darden cites, says that Congress, we're going to assume that when Congress uses employee in Darden, but in Reed the Court used employment, and said when those terms are used by Congress, we assume Congress intended for the ordinary terms to be used. And here Sotomayor, except the problem is that we don't really assume that, because the other side has presented us with multiple cases, many of them, in which we've used contract of employment to mean employees and independent contractors. It's all contextual, isn't it? Not really, Your Honor. Most of the cases, the vast – I'll give them this. They did a good job of cataloging haphazard, in-passing uses of contract of employment where it wasn't an issue. So in describing a case about an attorney and a client, a court years ago called it a contract of employment. Well, what do we do about the fact that, less haphazardly, your colleague on the other side has documented that back in 1925, which is when the statute was enacted, and I think you'd agree that we have to interpret it as a reasonable reader would have at that time, didn't necessarily distinguish between independent contractors and employees with the degree of care the law has subsequently come to use. And maybe even that your own client doesn't use, according to its website. It speaks of employing, I believe, I can't remember the exact variation of the word, but treats these independent contractors as employing them. So what do we do about the fact that that is at least an available reading still today and that there's a lot of historical evidence at the time of the statute in question that contract of employment may have swept more broadly? A couple of things, Justice Gorsuch. First, I don't agree with the Respondent that the independent contractor, contract of employment distinction was not well established. It was deeply embedded. This Court's decision in the Coppedge case, which we cite in our reply brief, specifically, rhetorically acts as if everyone would know about this distinction. We cited the Connington Treatise from 1920. It had an entire chapter called Contracts of Employment, and it made the explicit distinction, and this Court has over the years cited Mr. Connington in its cases, that contracts of employment were different than independent contractor agreements. But other treatises didn't? We cited another treatise, Your Honor. But other you're not denying other treatises didn't treat them differently? Well, they didn't really, to the extent they addressed the issue, the distinction was well established, Your Honor. Again, Respondent has cited a lot of authorities where it just wasn't a discussion or an issue. And the need for a narrow construction of Section 1 in order to further the pro-arbitration policies of the Act, plus the presumption that Congress meant what it said when it said employment, that means even if we come to a draw or even if they come up with some other authorities, the background presumption is that Congress meant contract of employment. And I think it's also important that it's been nearly 100 years, and no court had ever decided that the words contracts of employment, which are pretty clear, mean something completely different. The First Circuit and Mr. Oliveira contend that those words mean agreement to work. But if Congress, Justice Sotomayor, had wanted to say agreement to work, it could have said that. It said contracts of employment. So I think it's just very clear from the language of the statute that Congress intended traditional employment agreements to be the subject of the exemption. The other question is the gateway question. Who decides this? Your Honor, we believe that the Court's cases like Rent-A-Center and First Options and that talk about whether you have a valid delegation clause, in the first instance the issue goes to the arbitrator because the parties agreed to arbitrate issues concerning what's arbitrable. And that's what this is. We admit, we concede that it's a bit different than some of the Court's cases. So the Kindred Nurseries case that ruled, where the Court ruled that the Federal Arbitration Act, there was a dispute about formation, and the party there had argued that because there was a dispute as to whether an agreement was formed, the FAA hadn't been triggered. But if Section 1 puts an entire category, even if you say it's a narrow category, outside the Arbitration Act entirely, it's exempt from the Federal Arbitration Act, then how can you use the Arbitration Act? The delegation clause would never come into play because agreements that fit the description, contracts of employment, they're outside the Federal Arbitration Act. You can't use the Act to enforce any arbitration. Yes, Your Honor, that's Respondent's argument, and I recognize it is a bit different than Kindred Nurseries, but it's very similar in the sense that the party there was arguing the Federal Arbitration Act isn't triggered because the agreement is invalid from the get-go. But the main point I would like to make on this issue about delegation is we trust courts, too. Our main concern about what the district court did originally was to rule that correct first ruled correctly that this was not a contract of employment, so that that issue needed to be looked at. But then the Court said there would be discovery and then a trial to determine whether the exemption applied. And we respectfully submit that whoever decides this, an arbitrator or a court, it should be done based on the four corners of the contract and based on whether it's a contract of employment or an independent contract. Ginsburg. I thought the trial in all was supposed to be to determine whether this was an independent contractor and therefore outside the Section 1 exemption. Exactly, Your Honor. And our point is that's the really merits of the case. Mr. Oliveira's argument is that in actual fact, he was an employee, and the way the relationship in practice functioned. So that's the merits. So if we're required to have a trial in Federal district court about that issue, and if Newprime prevails and it's determined that he's actually an independent contractor, the right to arbitrate that issue would have basically been defeated. Mr. Boutrous, you've moved nicely to the merits, but just so we haven't ignored where we've moved so quickly in response to Justice Ginsburg's question, and I share the same concerns, so perhaps you can help me. Before a court can do anything, issue an order under Section 4, compelling arbitration, that's what you want, is an order from the district court, compelling arbitration. I would have thought it would have had to satisfy itself, it had the power to issue such an order. And Section 1 has this carve-out. And why isn't it more like a challenge to the delegation provision itself, if you want to use rent-a-center as your authorities, I believe you do? Rather than a challenge to the underlying contract. If we're going to make an analogy, I would have thought the analogy would have worked the other way. Help me. I think, Your Honor, I have to say that is another analogy, and it's one that – it's another way the Court could go. But here, the presumption has kind of been flipped on us. We have an agreement that was in commerce. Everyone agrees with that. It's not a contract of employment. It's an independent contractor agreement. On the face of the Federal Arbitration Act, the district court had jurisdiction. The plaintiff, Mr. Oliveira, is asking for an exception. We agreed that if we had a dispute over an issue, any issue arising from the agreement, it would go to an arbitrator. And so it's not a question of jurisdiction. The Federal District Court, I think, had the power, inherent power, to stay or in specific order, specific performance of an agreement aside from the Federal Arbitration Act. But I do recognize that we're asking on that issue for the Court to take another step. And pivoting back to the merits, on that point, it's the Respondent who's asking for an upheaval. Basically, they argue that every word in the exemption is a surprise word. Contract means agreement. Employment means work or business of any kind. Seaman means everything. And in the Wisconsin Central case from last term, where the question was what does money mean, the Court said the government had made a decent case that money could be interpreted more broadly, but that wasn't the ordinary usage. And the Court said, does money – is it really ordinary to say money means everything? Here, Mr. Oliveira is basically arguing that contract of employment means every type of work or business. Robertson, saying that the arbitrator will decide arbitrability, there are different degrees of arbitrability. It's one thing to say, for example, if you have an agreement, we'll arbitrate all disputes on the plant floor. And then, you know, the company builds another extension of it, and then the question is whether it applies there. That's sort of within the four corners of the arbitration agreement. But if the issue is, does the Act apply at all, that seems to be on a different order of magnitude. And it seems quite another thing to say that the arbitrator gets to decide whether a court can decide or compel arbitration at all. It is a different thing, Your Honor. And we, as I said, if the question is whether a district court would decide this, we'd be happy to have the Federal District Court interpret the contract, or this Court could do it. The contract is an independent contractor agreement on its face. So I do think it is a different inquiry. And this Court has never held that interpreting that provision is an arbitrability issue that can be said to apply. Breyer. The reason that it's different is that when you decide whether parties have agreed to arbitrate arbitrability, is there an arbitration clause or not, you're looking to their intent and contract document. When you decide whether there are procedural bars to this arbitration, you are looking to interpret a contract again, which will have the thing there. All right? Here, we are not doing that. We are interpreting a statute. And there is no reason to say, well, all right, you see that? I mean, it is, it seems to me, very different. As to the general question, if you read this just off the bat, you might think there is a whole category of arbitration called labor arbitration. And labor arbitration, even in 1925 and before, worked pretty well. And so you might have thought that Congress had in mind, we're not talking here about labor arbitration. We're talking about business arbitration, and particularly labor arbitration where we don't have constitutional authority to act, because that's what people thought in 1925. And so that is not just a dictionary word. That saying, but thereafter, is trying to exclude arguments between employees not in interstate commerce, et cetera, and their employers from this statute. The NLRB or its predecessors or early other methods are available for labor arbitration. If you take that as a kind of framework, it's hard to do with Circuit City, I grant you. But still. Gershengorn I was about to say that. Breyer Of course. But still, Circuit City is, it says what it says, but I don't know, we want to go further than necessary. Gershengorn Well, Your Honor, and I do think if we look at the dissent in Circuit City was making the point that this was about labor statutes. But the labor statutes apply to employees, and the unions are bargaining for employees, not for independent contractors. The labor strife and the labor peace issues were employees striking, and the battles between the railroads and the unions. But on the argument that the independent contractor status here was a sham, that it was a label rigged to make this person appear on the face, as you said, an independent contractor, when, in fact, the new prime calls all the shots, whether you label this driver an independent contractor or an employee, he is subject to new prime's control as to a lot more than just the result of the work. That argument that this person, this is a phony label, that in fact this person is an employee, not an independent contractor. Gershengorn We disagree, obviously, on the merits. That's the merits question that would be arbitrated. And if Mr. Oliveira is correct, he would be entitled to further relief under the Fair Labor Standards Act, which is one of the provisions he's suing under. We disagree with that. And the other point, Justice Ginsburg, is that here it's undisputed that Mr. Oliveira had the choice, the free, at his choice could be either an independent contractor or an employee. Ginsburg He was told that you're, he was told by a new prime's representative, you could be one or the other, but it's to your benefit if you elect the independent contractor format. Gershengorn But, yes, Your Honor, that's what he alleges. But the, the, there's evidence, some of the amicus briefs talk about this, that independent contractors make net out much more in pay. They have freedom and flexibility. And it may be that it didn't turn out well for Mr. Oliveira. And if he's right, and I want to make this clear, the arbitration process needs to be fair, and he would have, Mr. Oliveira and new prime would put their cases onto an arbitrator. And if he's right, he'll prevail. If new prime's correct, it will prevail. And these arbitration proceedings can produce significant awards. Multiple people will bring the actions. I've, I've seen it happen with great frequency. There is effective relief. And so the theory that this is a sham, that goes to the, the merits and to the function and how the relationship was in practice. Roberts, did I understand, I've been pondering your answer to the question I asked a while ago. Did I understand you'd be perfectly happy to have a court decide the arbitrability issue here? You, Your Honor, we, we think that the, that there's a, that, as we've argued, that this falls within rent to center, maybe one step beyond. But if the court were to rule that independent contractor agreements are not contracts of employment, but we need a court, either this court or the district court to decide that. As I said, we trust courts, too, to make that determination. Well, I must admit, I thought there was a lot of fighting over the question of whether a court or an arbitrator should decide the arbitrability in this case. I thought that was the first question presented. That, that is the first question presented. We stand on it, Your Honor. I'm not abandoning it. But the, the main problem we have with what the district court ordered, the principal problem, was that it was going to be a trial on the main issue, in fact, the issue Justice Ginsburg mentioned, that is this really an independent contractor agreement, is it a contract of employment? The statute focuses on the contract, not on the activities. And so the first step we would respectfully submit if the court rejects our argument about arbitrability would be to rule that this goes back to the district court or this court rules on the, as a matter of law, based on the contract, and then the case, if we're correct, that it is an independent contractor agreement. I think it's, on the undisputed facts, it is, it has all the elements. Then we go to arbitration and then we litigate the issue. Sotomayor, is there any other area of law where we take the party's label, employee versus independent contractor, and give it binding effect? I, I, I thought for virtually every other purpose in tax law, labor law, I, I just don't know another area where we take the form of the contract as dispositive of a legal issue, of whether you're an employee or an independent contractor. Here, I, I, I can't think of one, but here we have the unique circumstance where the statute focuses on the contracts. And as, I think Justice Breyer was making the point, this was back in 1925 where there was a real sensitivity about commerce power. And so here the statute focuses on the contracts. And I go back to Darden and Reed and, and the 1915 decision that's cited in those cases, in Robinson, which I think the case. Sotomayor, it only gets you as far as letting the arbitrator decide whether the arbitrability clause controls. I don't think that gets to the legal responsibility. But, but, Your Honor, and, and. To the merits question. No. Whether he was an employee or an independent contractor entitled to more pay or not. And, and, Your Honor, I, I hear what you're saying. I, we're not arguing that if you just slap the label independent contractor on a contract, game over. The terms of the agreement give Mr. Oliveira the power to work for others, to, to determine how to do the job. It, it has all the features of an independent contractor. Sotomayor, I don't want to argue the merits. I'm arguing, meaning, that you can argue. Yes. You argue to the court's lust on that, on at least the arbitrability. Yes. And, and on that point, Your Honor, in terms of determining whether it's arbitrable, my only point was that whether it's the arbitrator or the court, the inquiry should be what is this agreement? Is it a contract of employment on its face, the four corners of the agreement? If, if it, if it is, then it's exempt from the Act. If it's an independent contractor agreement, it's subject to the Act, then the arbitrator would do, Your Honor, what you were suggesting, probe the arguments. Was this a legitimate agreement? What was it? And is Mr. Oliveira entitled to relief? With that, Mr. Chief Justice, I'd like to reserve my time. Thank you. Roberts. Thank you, counsel. Ms. Bennett. Mr. Chief Justice, and may it please the Court, it's black-letter law that statues are interpreted according to their ordinary, common meaning, not now, but at the time they were passed. And there's overwhelming evidence that in 1925, when the Federal Arbitration Act was passed, the words contract of employment were a general category for agreements to perform work. They included the agreements of common law servants as well as independent contractors. Whether you look at statutes, case law, newspaper articles, even actual contracts themselves, the result is the same. The vast majority of sources call independent contractors' agreements to perform work contracts of employment. And perhaps most relevantly, Congress itself repeatedly used the phrase that way. Congress passed multiple statutes contemporaneous with the FAA that all used the phrase contracts of employment to refer to independent contractors' agreements to perform work. Prime has said nothing about these statutes at all. Instead, Prime dismisses the mountain of sources that use the phrase contracts of employment to refer to independent contractors' agreements to perform work, as people unthinkingly using the term that way. But that's in fact precisely the point. Without even thinking about it, everyone from this Court to Congress to newspaper articles to ordinary contract drafters themselves, everyone understood the category contracts of employment to include the agreements of independent contractors as well as other workers. Alito, does the concept of a contract of employment involving a class of workers and Justice Sotomayor focused on the term workers, a class of workers engaged in foreign or interstate commerce apply to all independent contractors who are engaged to perform some type of work? It would apply to all independent contractors who are engaged in foreign or interstate commerce. And this Court has said that the class of workers engaged in foreign or interstate commerce is quite narrow, actually. It's people who are directly involved in transporting goods or so closely associated to it to be assumed to be essentially directly involved. So anybody who's involved, it doesn't – there are no distinctions among the types of independent contractors who might be covered? No, Your Honor. As long as they're a worker, then anybody is a – But anybody who does work is a worker? Correct. That's correct, Your Honor. And this makes sense if you look at the historical context and the statutory context when this exemption was enacted. So Circuit City says that the exemption was trying to achieve two goals. The first goal is Congress was trying to avoid conflicts with preexisting dispute resolution statutes. And the preexisting dispute resolution statutes in force at the time define their scope functionally in terms of the work that was performed, not in terms of the worker's employment status. And so if the exemption depended on a worker's employment status, it would create exactly the kinds of conflicts that Congress was trying to avoid. So if you look, in fact, at the Transportation Act, which was the statute that governed railroad workers at the time, and if you look, in fact, at every dispute resolution statute that preceded the Transportation Act, they all define the phrase railroad employees to mean a worker engaged in the work of the railroad. That is, they defined it based on the work that you did, not your technical employment status. May I go back to Justice Alito's question and just give you a hypothetical and say whether your argument includes this, too? So suppose that Amazon contracts with FedEx or UPS to ship all its products, and they want to send their disputes to arbitration. Does that fall within the Act, or does that fall within this exemption? It would not fall within the exemption. It would be subject to the FAA. And the reason for that is because the FAA requires or exempts, rather, a class of workers engaged in foreign or interstate commerce, not companies engaged in foreign or interstate commerce. And FedEx wouldn't be considered a worker. They would be considered a company. And I want to return to what Circuit City said about the goals of this exemption. Kagan. So just give me a little bit more on that. In every case, we have to figure out whether a worker is involved or a company is involved? That's correct. And in most cases, that won't be difficult. Here, for example, that's not a disputed issue, and I've seen very, very few cases where that is, in fact, a disputed issue. But it's true that if in the rare case where it is, the court would have to figure that out. And that's based on the text of the FAA. The FAA says we exempt these kinds of contracts. And so if there are questions about whether a contracted issue is the kind of contract that's exempted, then a court has to figure it out to determine whether the FAA applies before applying it. And to return to the goals of the Act expressed in Circuit City, so we have not conflicting with preexisting statutes, and we know that those statutes applied functionally. They applied to people's role in work. And I'll note also on that first goal, even if we interpret those other statutes narrowly to apply solely to common law employees, on Prime's interpretation, the FAA would still conflict with the other statutes, because even if those other statutes applied only to common law employees, what Prime is saying is the exemption doesn't apply to common law employees. It applies to whatever to people whose contracts say they're common law employees, even if they're not. And so you'd have a whole class of people, even on Prime's interpretation, that would be subject both to these alternative, preexisting alternative dispute resolution statutes, as well as the FAA. So anybody whose contract was silent, anybody who was illegally misclassified. And so there would be a conflict even on Prime's own interpretation of these statutes. And again, we know that these statutes, in fact, were applied functionally. The historian's brief describes dozens of cases in which the Transportation Act was applied to independent contractors or people working for independent contractors. And the second goal of the statute, as Circuit City explains, beyond these specific conflicts, is that Congress was concerned generally with transportation workers' role in the free flow of goods. The FAA was enacted in the wake of years of labor unrest in the transportation industry that had repeatedly shut down commerce. And I want to note that this labor unrest, Prime says that it was only common law employees of the railroads. That's, in fact, not true. The Shopman strike, which happened just before the FAA was passed, was caused in large part by workers who were not common law servants of the railroads that they were striking against. And so given these years of labor unrest and the havoc that Congress had seen that people who were not common law servants could wreak, it makes perfect sense that Congress would exempt workers based on their role in the transportation of goods, that is, their ability to shut down commerce, rather than their technical employment status that was listed in their contract. It would make no sense at all for Congress to treat workers who had the same ability to disrupt Congress differently simply because of what their contract said. And I want to note that if we take Prime's interpretation, it would also lead us to absurd results in at least two ways. First, on Prime's interpretation, if a worker's contract is silent, that is, if it doesn't say what your employment status is or not, then it would be impossible to determine whether to apply the contract at all. And second, if a contract misclassified a worker, illegally misclassified a worker as an independent contractor, then the FAA, unlike any other Federal statute, would depend on that illegal misclassification rather than the actual worker's status. And so we have the text of the statute, the context of the statute, and the absurd results that would result, all leading us, pointing us in the same direction. And on the quickly, just on the first question, I want to note that I think, as Your Honors understand, in general, we don't apply statutes that don't apply. And so if a court is going to apply a statute, it has to figure out first whether it applies. Sotomayor, Justice, please. Ginsburg, what is the Petitioner's argument that, forget about the FAA, that a court has inherent authority to stay a proceeding pending utilization of an alternate dispute resolution mechanism chosen by the parties? Your Honor, as this Court has repeatedly explained, courts have a duty to exercise the jurisdiction that Congress has granted them. The exceptions to that duty are really under exceptional circumstances. And one of those exceptions could be an ongoing proceeding, but there is no ongoing proceeding here. Courts generally don't have the authority to just stay a proceeding just because they want to or because there might be some proceeding that happens in the future. And I'll note that Prime did not ask the Court to use its inherent authority. Prime solely asked the Court to rely on the FAA. And so the Court has to decide whether the FAA applies to know whether it can grant Prime's request. Well, I understand your friend on the other side not to care about that. That is how I understood the argument as well. That's correct. And I just want to yes. Well, while we have you here, you, in response to Justice Alito and Justice Kagan, you raise a very interesting point about the difference between workers and companies. And similar to the kind of question we have here presented between employees and independent contractors, there are going to be fact issues in either circumstance where a district court is going to have to sort them out. Courts disagree over how summary those procedures should be. Let's say we're just in a world of workers versus companies. How would you expect the district court to sort that out? I mean, the FAA is supposed to resolve these things quickly. In a summary fashion, Section 4 says if there's a dispute of whether there is a contract arbitrate, it's supposed to go to a summary trial, not 5 years of discovery and all of the glories that entails that we're often painfully familiar with these days. But how would you advise us to write that portion of the opinion? Your Honor, at first blush, you could look at the contract, and it would only require factual, any sort of factual inquiry if there was a dispute about it, you know, say the contract was a subterfuge or the contract doesn't say anything at all. And in the few cases where this has come up, I believe courts have resolved it largely on declarations, and very limited discovery would be needed to determine whether a person performed the work himself. The question would be, did the parties contemplate that the individual who is suing performed the work himself, him or herself, or did they contemplate that it would be a company? And so that inquiry would require a very limited discovery, if any at all. So is it safe to say that we have at least common ground on one thing, maybe a few things today, but at least on this, that the proceedings may not be limited to the form of a document before us, but should be summary in nature? Yes, I agree with that, Your Honor. That's correct. What do you mean by a company? I mean anything that is not a real person. So, for example, a corporation would be a company. A corporation would be a company. What if it's a sole proprietorship? Then the question would be, what did the parties contemplate that the person who owns the proprietorship would perform the work himself? And if that's true, then it would be an agreement to perform work of a transportation worker. If that's not true. So some independent – I thought you said all independent contractors would fall within this, provided that they were engaged in foreign or interstate commerce in the sense relevant under the FAA, but now I think you're – are you modifying that? So are you modifying that? Yes, Your Honor. I'm sorry. I misunderstood the initial question. I was talking about people who would be considered workers. So independent contractors who are businesses would not fall within the exemption. And that's based on the text of the exemption. So if they're businesses, what does that mean? I mean, I got you on corporations, but beyond that, are we getting into a difficult area? I think the – It's a sole proprietorship if it's a partnership, but it's in business. I think it's easiest to approach the question from the other direction, which is to say, was this – did the parties contemplate that the person with whom they agreed would personally perform the work? And if so, then it would be an agreement to perform work with a transportation worker. If the parties didn't contemplate that the person who agreed to do the work would personally do it, then it wouldn't fall within the exemption. And so we don't need to decide the exact definition of business. Solely, just is this an agreement for someone who is engaged in commerce to personally perform the work? But to take an opposite extreme from UPS or FedEx, you know, suppose it's like Joe Smith Truckers, and Joe Smith Truckers is Joe Smith and his brother. And the contract was with Joe Smith Workers, and he says, my brother will do the work. So if the parties contemplated that the brother would do the work, if the brother is the one suing, he's likely not bound by the arbitration agreement at all, because he won't have been the one to sign it. The business will have been the one to sign it. If Joe Smith is suing, and if then the question would be, did the parties contemplate that Joe Smith was agreeing to perform work as a transportation worker, or did the parties contemplate that Joe Smith was agreeing that this company, somebody at this company would perform work? And I think that would be the question. And this is a really rare – as this case shows where it's undisputed, it's a really rare situation in which it would come up. And part of the reason for that is if a company agrees to arbitration, then it's hard to say that any individual who wasn't contemplated in the contract would have agreed to arbitration at all. Alito, it sort of sounds like what you're saying is that if the person is a real independent contractor, then the person is outside of the exemption. But if the entity is not a real independent contractor, which is your argument here regarding Mr. Oliveira, it's different. Saharsky, I would say if there are individual workers who are independent contractors, and we know there were such workers in 1925 as now, there are individuals who are independent contractors, even if they're bona fide independent contractors, they would be covered within the scope of the exemption. What I'm saying is if there's an agreement that's not of a specific person, a worker to perform work, then they're outside the scope. And I want to quickly address one point that Prime said. Prime says that none of the sources that we have cited are in the context of distinguishing between independent contractors and common law servants, and that's in fact not true. We cite dozens of sources that are in that context. In fact, we cited treaties that is about the law of independent contractors. The reason that's not the majority of sources we've cited is because we've also cited dozens of sources in which – in a bunch of different contexts. And so the overwhelming weight of authority in all of these contexts is that a contract of employment was an agreement to perform work. And we were talking about Wisconsin Central before. What Wisconsin Central says is we look at what the ordinary common meaning is, and it's very clear that what an ordinary common person would have understood this exemption to mean in 1925 is that it applied to all agreements to perform work. We don't look at the rare isolated instance. We look at the overwhelming weight of authority, and that means that the agreement is an agreement to perform work. If there are any other questions, I'm happy to take them. Alito, I don't know whether the exemption applies, but then you lose on the issue of the interpretation of the exemption. The Court says it doesn't apply to an independent contractor. Mr. Olivera is an independent contractor, therefore I'm going to order arbitration. Would the arbitrator then be bound by the determination that he is an independent contractor for purposes of applying the Fair Labor Standards Act? No, Your Honor, for two reasons. First, it would just be an initial decision of who the right decisionmaker is, and if the Court held that the right decisionmaker is the arbitrator, then the arbitrator could make that decision. But the second answer is that if a court were to decide the question of the court were to hold that the exemption only applies to common law servants, then it would likely decide that question under the common law, and the Fair Labor Standards Act has a different standard. And so the question on the merits of whether a worker is an employee or an independent contractor is different than the question that would be if the Court interpreted the exemption to be limited to common law servants. And on that point, I do want to note that Prime cites, you know, a handful of isolated instances, but in fact none of the sources that Prime cites in fact support its position. None of those sources say that we look just to the contract to see whether someone is a common law servant. At most, those sources use the phrase contract of employment more narrowly than what we would suggest the ordinary meaning is. But none of them say that if there is reality contrary to the contract, we would look at that. And again, so both the structure of the statute, the text of the statute, and the history, all of those factors mean that in 1925, the ordinary person would have understood this exemption to apply to all agreements to perform work of transportation workers. If there are no further questions, thank you. Roberts Thank you, counsel. Mr. Boutros, you have 5 minutes left. Boutros Thank you, Mr. Chief Justice. I want to start by saying we agree with Mr. Oliveira's position that a determination that this was an independent contractor agreement and therefore could go to arbitration would not bind the arbitrator. Then we'd go to the merits. Since counsel left off with the language and history of the statute, let me just go back to the statute. It says, ''Contracts of Employment'' and this Court, the Reed case, which is community for creative nonviolence versus Reed, this Court, this Court said, quote, ''Nothing in the text of the work-for-hire provisions'', it was the Copyright Act, ''indicates that Congress used the words ''employee'' and ''employment'' to describe anything other than the conventional relationship of an employer and employee.'' The Court then went on to say that when Congress hasn't put anything in the statute to suggest that something else, like any worker doing anything, I'm paraphrasing, then we look to traditional common law agency principles. On pages 10 and 11 of our brief, we responded to the cases and authorities that Mr. Oliveira cited with, among other things, this Court in the Coppage case. The Court declared, ''Does not the ordinary contract of employment include an insistence by the employer that the employee shall agree as a condition of the employment that he will not be idle and will not work for whom he pleases, but will serve as present employer and him only so long as the relationship between them shall continue?'' Ginsburg Was it Coppage v. Kansas shall not join a union? Was that the contract at issue? Fisher I think so, Your Honor. And it was Coppage, yes, Coppage v. Kansas. And so the Court there was clearly making the very distinction we're talking about, that it was well established that a contract of employment was what most people would think. I have a job, I have an employer, they can tell me what to do, they can tell me when I come to work, they can order me to perform tasks. That was the kind of contract that was involved in Coppage v. Kansas was outlawed by the National Labor Relations Act, wasn't it? Fisher Your Honor, the ‑‑ I don't know, Your Honor, on that point. But ‑‑ Ginsburg Or Norris LaGuardia before that. Fisher But the reason we cite it, Your Honor, is that it was well established what a contract of employment was. And the other point I wanted to make was on the alternative dispute resolution provisions that Circuit City talked about. Again, the Court said with respect to each of them, first of all, Congress with the exemption was not seeking to oust certain parties from arbitration. It was protecting arbitration because there were alternative mechanisms. So the exemption itself is pro‑arbitration. And in Circuit City on page 120 and 121, with respect to each of the provisions it cited, the Court talked about employment relationships. So with respect to the Transportation Act that counsel mentioned, it talked about the employees under the Federal law, cited the Transportation Act, Railway Labor Act, employees, the Shipping Commissioner Act, employers and employees. So this Court and Congress were anticipating the traditional employment relationship based on the language of the statute. And with respect to the scope of the provision, in this case, the independent contractor agreement is between New Prime and the Limited Liability Corporation that Mr. Oliveira formed. So it is an agreement between two businesses, and counsel is saying, and then we have to look and see how the parties contemplated the arrangement would function. But the agreement itself says that Mr. Oliveira could hire other employees, could work for other entities. It gave him the right to do that. So from the face of the contract, it gave him all of those rights. And finally, just with respect to the definition of who is an employee and who is not, because I do think it's relevant, to divorce what Mr. Oliveira did was take the word contract and find the broadest definition of contract, and then employment and find the broadest definition of that and put them together. We cite Black's Law Dictionary, which says a contract of employment, and this, tracking it back to 1927, was an agreement between an employer and an employee that states the terms and conditions of employment. But the broadest, this Court has said, has striking breadth, the broadest definition in Federal law of employees in the Fair Labor Standards Act, the very provision that Mr. Oliveira is invoking here, and independent contractors are not covered by that definition. So it would be anomalous in the extreme to rule against us on these issues. Thank you very much. Roberts. Thank you, counsel. The case is submitted.